USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 08/31/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FRANCIS HENRY RUGGIERO,

                              Plaintiff,

        -against-

C.O. LARRY WAY and SGT. R. BROWNE,

                              Defendants.

---

19-CV-3631 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Francis Henry Ruggiero ("Plaintiff"), proceeding *pro se*, commenced this action pursuant to 42 U.S.C. § 1983 against C.O. Larry Way ("Way") and Sgt. R. Browne ("Browne," and together with Way, "Defendants")[1] on April 23, 2019.  (ECF No. 2.)  Plaintiff filed a First Amended Complaint ("FAC") on June 17, 2019.  (ECF No. 16.)  In substance, Plaintiff alleges Defendants violated his rights under the Eighth, Fourteenth, and First Amendments of the United States Constitution.  (*Id.*)

Presently before the Court are Plaintiff's Motion to Amend the FAC pursuant to Federal Rule of Civil Procedure 15(a)(2), (ECF No. 39), and Defendants' Partial Motion to Dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6), (ECF No. 41).  For the following reasons, Plaintiff's motion is DENIED without prejudice and Defendants' motion is GRANTED.  However, dismissal of Plaintiff's claims is without prejudice and with leave to replead.

---

[1] Plaintiff's claims against other parties in his original complaint were dismissed with leave to replead on May 9, 2019.  (ECF No. 8.).  Plaintiff did not include those parties in his First Amended Complaint.  (*See* ECF No. 16.)

**BACKGROUND**

**I.    Factual Allegations**

The following facts are derived from the FAC or matters of which the Court may take judicial notice and are taken as true and construed in the light most favorable to Plaintiff for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

During the relevant time period, Plaintiff was an inmate at Fishkill Correctional Facility ("Fishkill"). (First Amended Complaint ("FAC") (ECF No. 16) 4.) On January 24, 2019, at approximately 10:00 p.m., Plaintiff was involved in a verbal altercation with another inmate whom Plaintiff refers to as "Inmate Black" in his housing unit. (*Id.* ¶ 1.) After speaking with a third inmate, Joseph Sorrentino, Plaintiff approached the Corrections Officers' desk and reported what had happened with Inmate Black to nonparty Corrections Officer Collis ("C.O. Collis"). (*Id.* ¶¶ 2–3.) Plaintiff asked to be moved from his current housing unit to be "free from harm." (*Id.* ¶ 3.) C.O. Collis then directed Plaintiff to "get on the wall," handcuffed Plaintiff, and frisked him. (*Id.* ¶ 4.) Defendant Browne was then called to the housing unit. (*Id.* ¶ 5.)

While Plaintiff waited for Defendant Browne, Defendant Way entered the housing unit and "came behind" Plaintiff and proceeded to grab Plaintiff's head and slam it against the sign-out board. (*Id.* ¶ 6.) Defendant Way then began to choke Plaintiff from behind, causing Plaintiff to nearly lose consciousness. (*Id.*) Plaintiff was left bleeding for approximately 20 to 30 minutes after the alleged assault, despite his request for treatment. (*Id.* ¶ 9.) Eventually, Defendant Browne came to the housing unit and asked Plaintiff what had happened. Plaintiff told Defendant Browne what had happened and was then taken to "medical." (*Id.* ¶ 10.)

As a consequence of the assault, Plaintiff suffered a severe facial laceration requiring his forehead to be "glued shut" at Putnam Hospital.  (*Id.* ¶ 7.)  Plaintiff was left with a scar over his right eye, loss of vision in his right eye, migraine headaches, dizziness, and severe anxiety.  (*Id.* ¶ 8.)

At some point thereafter, Defendant Browne allegedly falsified a misbehavior report against Plaintiff and issued him a disciplinary ticket.  (*Id.* ¶ 12.)  Plaintiff was found guilty of an unspecified charge and held in the Special Housing Unit ("SHU") for 30 days.  (*Id.*)  Following this incident, Plaintiff filed a grievance.  (*Id.* ¶ 13.)  However, Plaintiff was released on parole before he could find out the outcome of his grievance and he never received any reply.  (*Id.*)

Plaintiff states that at some point after his release from SHU, he spoke to C.O. Collis, who said he would speak to Plaintiff's former attorney about the alleged assault because "he didn't think it was right what happened to [Plaintiff]."  (*Id.* ¶ 14.)  C.O. Collis told Plaintiff he would not lie about what happened and would freely give a statement to the Court or Plaintiff's attorney.  (*Id.*)  However, C.O. Collis never responded to any of email requests made by Plaintiff's attorney and Plaintiff's attorney eventually withdrew from the case.  (*Id.* ¶ 15.)

On or about April 2019, Plaintiff returned to Fishkill for 90 days after violating the terms of his parole.  (*Id.* ¶ 16.)  On April 27, 2019, Plaintiff was directed to report to Defendant Way's post.  (*Id.*)  Defendant Way and another Corrections Officer had Plaintiff frisked and then verbally harassed him, calling Plaintiff a "Fagit [sic] and saying [Plaintiff] was a rat."  (*Id.*)  They also threatened Plaintiff, saying they were going to kill him because of the grievances Plaintiff filed, telling Plaintiff he would not make it home, and accusing Plaintiff of making up the story of the assault.  (*Id.*)  The harassment lasted approximately 30 minutes.  (*Id.* ¶ 17.)

## II.     Procedural Background

After service of the FAC, Defendants petitioned this Court for leave to file a partial motion to dismiss.  (ECF No. 28.)  By Order dated August 30, 2019, the Court granted Defendants' request and set a briefing schedule for the motion to dismiss.  (ECF No. 30.)  Pursuant to that schedule, Plaintiff's response to Defendants' motion was to be served on October 30, 2019.  (*Id.*)

Plaintiff then made a series of applications to the Court seeking, *inter alia*, to amend the FAC and extend his time to oppose the motion to dismiss.  (ECF Nos. 31, 33, 35.)  By Order dated October 31, 2019, the Court denied Plaintiff's request to amend without prejudice, as Plaintiff had provided no detail as to the manner in which he wished to modify the FAC.  (ECF No. 38.) However, the Court extended Plaintiff's time to file opposition to Defendants' motion until December 2, 2019.  (*Id.*)  Rather than submit opposition, Plaintiff filed another motion to amend the FAC on November 15, 2019, and a subsequent letter dated December 2, 2019, seeking a disposition on the motion to amend.  (ECF Nos. 39, 40.)  Defendants' motion to dismiss was fully submitted as of December 16, 2019.  (ECF No. 41.)

## LEGAL STANDARDS

## I.     Federal Rule of Civil Procedure 15(a)(2)

A party may amend a pleading once as a matter of course or at any time before trial with leave of the court.  Fed. R. Civ. P. 15(a)(1)-(2).  When a party seeks leave to amend a pleading, "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2). Nevertheless, the Court may deny leave to amend for "[r]easons [of] ... undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.3d 843, 856 (2d Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason-such as undue delay,

bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. the leave sought should, as the rules require, be 'freely given.'")).

## II.     Federal Rule of Civil Procedure 12(b)(6)

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570.  A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable.  *Iqbal*, 556 U.S. at 678.  To assess the sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).  While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678–79.

*Pro se* complaints are to be liberally construed.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  They must be held to less stringent standards than complaints written by lawyers, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief."  *Estelle*, 429 U.S at 106 (quoting *Conley v. Gibson*, 335 U.S. 41, 45– 46 (1957)).  This "is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated."  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).  *Pro se*

complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief."  *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

### a.  42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).  To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'"  *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

### I.  Plaintiff's Motion to Amend

Plaintiff seeks leave to amend the FAC "to prove personal involvement" on the part of Defendant Browne and attaches to his application a proposed second amended complaint.[2]  (Pl.'s

---

[2] Plaintiff also includes a separate request for a temporary restraining order prohibiting Defendants from coming near him.  (Pl.'s Mot. to Amend ("Pl. Mot.") (ECF No. 39) 18.)  It is the Court's understanding the Plaintiff has repeatedly requested such a restraining order because of his continued confinement at Fishkill Correctional Facility ("Fishkill"), where Defendants work.  However, Plaintiff was released from Fishkill as of December 31, 2019, and now resides in Newburgh, New York.  (ECF No. 43.)  Accordingly, Plaintiff's request for a temporary restraining order is denied as moot.

Mot. to Amend ("Pl. Mot.") (ECF No. 39) 3, 4–15.)  To date, Defendants have not responded to

Plaintiff's motion.  For the following reasons, Plaintiff's motion is denied without prejudice.

Leave to amend may be denied "on grounds of futility if the proposed amendment fails to

state a legally cognizable claim or fails to raise triable issues of fact." *AEP Energy Servs. Gas*

*Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir.2010) (quoting *Milanese v.*

*RustOleum Corp.*, 244 F.3d 104, 110–11 (2d Cir. 2001)); *accord Ruotolo v. City of New York,*

514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman*, 371 U.S. at 182).  A proposed amendment is

futile if it "could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Lucente v. Int'l*

*Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (internal citation omitted).  Thus, a court

should deny a motion to amend if it does not contain enough factual allegations, accepted as true,

to state a claim for relief that is "plausible on its face." *Riverhead Park Corp. v. Cardinale*, 881

F. Supp. 2d 376, 379 (E.D.N.Y. 2012) (quoting *Twombly*, 550 U.S. at 570 (denying motion to

add claims as futile)).

In determining whether a complaint states a plausible claim for relief, a district court

must consider the context and "draw on its judicial experience and common sense." *Iqbal*, 556

U.S. at 679.  It is important to note that "pleading is not an interactive game in which plaintiffs

file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable

complaint emerges." *In re Merrill Lynch Ltd. P'ships Litig*, 7 F. Supp. 2d 256, 276 (S.D.N.Y.

1997).  The court's "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a

duty to re-write it." *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387

(S.D.N.Y. 2009) (internal citations and quotation marks omitted).

The proposed second amended complaint Plaintiff has submitted does not contain any

new factual allegations.  Rather, Plaintiff has simply added to his original allegations legal

language, arguments, and citations. For example, in addition to describing the alleged

occurrences of January 24, 2019, Plaintiff states that on that date "Defendants under color of

New York State Law violated Plaintiff's rights in a constitutional deprivation w[h]ich consists of

an Eighth Amendment and a Fourteenth Amendment and a violation of these rights." (Pl. Mot.

7.) Elsewhere, Plaintiff describes a number of legal standards such as deliberate indifference and

applies them to the facts of his case. (*Id.* 7, 10–11.) With regard to the "personal involvement"

of Defendant Browne in the alleged constitutional violations, Plaintiff merely repeats his

assertions that Defendant Browne wrote him a false disciplinary ticket when he knew Plaintiff

had been assaulted by Defendant Way, and that Plaintiff was sent to SHU as a consequence. (*Id.*

11–12.)

      In short, Plaintiff adds no new facts, parties, or claims in his proposed amendments.

Conversely, Plaintiff has omitted or indicated an intention to abandon some claims and factual

allegations, including those related to Defendant Way's alleged verbal harassment and threats.

(*Id.* 13–18.) As to the additions Plaintiff does propose, legal arguments and conclusions neither

create new claims nor suffice to nudge the claims that are deficient for the reasons discussed

below from conceivable to plausible. *See Iqbal*, 556 U.S. at 678–79. Under the circumstances,

where no substantive changes creating plausible claims have been proposed, Plaintiff's motion to

amend is denied without prejudice as futile. *See Bentz v. City of N.Y.*, 249 F. Supp. 3d 640,

644–45 (E.D.N.Y. 2017) (motion to amend denied where proposed amended complaint

contained "no substantial substantive changes" to allegations of original complaint and reflected

"operative facts essentially identical" to those included in original complaint); *McInis v. New

York*, 2002 WL 31357806, at *2 (S.D.N.Y. Oct. 17, 2002) (denying motion to amend where

petitioner added nothing of substance to his claims and merely provided numerous citations to caselaw while repeating the assertions of his previous submissions).

However, the Court notes that many of the legal arguments included in Plaintiff's proposed amended pleading are responsive to the arguments in Defendants' motion to dismiss. In light of Plaintiff's *pro se* status, the Court deems Plaintiff's submissions in support of his motion to amend as opposition to Defendants' motion to dismiss and considers such opposition in analyzing Defendants' motion.

## II.     Defendants' Partial Motion to Dismiss

Liberally construed, the FAC contains allegations that Defendants violated Plaintiff's rights under the Eighth, Fourteenth, and First Amendments.  Defendants seek to dismiss all of Plaintiffs' claims except for his Eighth Amendment excessive force claim against Defendant Way, arising from the alleged assault of January 24, 2019.  (Defs.' Mem. in Support of Partial Mot. to Dismiss ("Defs. Mot") (ECF No. 42) 1 n.1.)  For the following reasons, Defendants' motion is granted.

### a.    Failure to Protect/Intervene

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody."  *Hayes v. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 831 (1994)).  This requirement includes a general "duty . . . to protect prisoners from violence at the hands of other prisoners."  *Farmer*, 511 U.S. at 833.  Similarly, liability will arise for a prison official's failure to protect or intervene where he observes a fellow official using excessive force or has reason to know that excessive force will be used.  *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).

However, not "every injury suffered by [a] prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. Prison officials can be held responsible for such harms only if they act with "deliberate indifference" to inmate safety. *Hayes*, 84 F.3d at 620. The test for establishing deliberate indifference to inmate safety has an objective component and subjective component. *First*, under the objective prong, plaintiffs must show that they were "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. *Second*, under the subjective prong, plaintiffs must establish that the prison official acted with a "sufficiently culpable state of mind." *Id.*

To evaluate culpability under an Eighth Amendment deliberate indifference framework,[3] a prison official must know that the plaintiff "face[d] a substantial risk of harm and he [or she] disregard[ed] that risk by failing to take reasonable measures to abate the harm." *Hayes*, 84 F.3d at 620 (citing *Farmer*, 511 U.S. at 842, 845). The prison official need not be "aware[] of the specific risk to the plaintiff or from the assailant." *Warren v. Goord*, 579 F. Supp. 2d 488, 495 (S.D.N.Y. 2008). Rather, the risk may come from a "single source or multiple sources" and may be a risk that all prisoners in the plaintiff's position face. *Id.* (quoting *Farmer*, 511 U.S. at 843).

Even construing the pleadings liberally, Plaintiff has not alleged sufficient facts to plausibly state a claim for failure to protect. Plaintiff first suggests that Defendants failed to protect him when they did not transfer him to another housing unit at his request after Plaintiff's

---

[3] Although Plaintiff was incarcerated due to a violation of his parole when he commenced this action, the FAC indicates that, at the time of the events giving rise to Plaintiff's deliberate indifference and procedural due process claims, Plaintiff was a convicted prisoner completing a sentence. (*See* FAC ¶¶ 12, 16 (stating that Plaintiff was released on parole after such events and returned to Fishkill after violating parole on April 27, 2019.) A convicted prisoner's deliberate indifference claims are analyzed under the Eighth Amendment. *See Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 2614 (2019) ("Those incarcerated for a criminal conviction draw on the Eighth Amendment's ban on 'cruel and unusual punishments.' Meanwhile, pretrial detainees and non-incarcerated persons rely on the constitutional guarantee of 'due process.").

altercation with Inmate Black.  However, the FAC does not go so far as to allege that there were

any prior altercations between Plaintiff and Inmate Black, or that there were any specific threats

made by Inmate Black to Plaintiff.  *See Carrasco v. Annucci*, No. 17 CV 9643 (VB), 2019 WL

4413165, at *4 (S.D.N.Y. Sept. 16, 2019) ("In general, '[a] plaintiff must allege that the

defendants knew of a prior altercation between the plaintiff and his attacker, or of threats that

had been made against the plaintiff.' 'Courts routinely deny deliberate indifference claims based

upon surprise attacks.'" (internal citations omitted)).  More significantly, Plaintiff has not made

any allegation that he was harmed by Inmate Black at any time, or that remaining in a housing

unit with Inmate Black posed a substantial risk of serious harm.

Plaintiff next claims that Defendant Browne can be held liable for failing to protect him

from the alleged assault by Defendant Way.  Again, Plaintiff has not alleged that there were any

prior altercations between him and Defendant Way.  Nor does he allege that Way harmed

Plaintiff after Plaintiff complained to Browne of the attack.  Rather, Plaintiff states only that

Browne arrived at the scene of the assault after it ended and that Browne sent Plaintiff to get

medical treatment after listening to Plaintiff's account of the assault.  These allegations are

plainly insufficient to support liability against Defendant Browne.

Accordingly, Plaintiff's failure to protect or intervene claim is dismissed without

prejudice.

### b.  Deliberate Indifference to Medical Needs

In order to assert an Eighth Amendment claim for medical indifference, a plaintiff must

plausibly allege that a defendant acted with "deliberate indifference to serious medical needs."

*Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Estelle*, 429 U.S. at 103); *see also*

*Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  It is well-established that "the Eighth

Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, [and that] not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003); *see Estelle*, 429 U.S. at 106, ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Salahuddin v. Goord*, 467 F.3d 279 (2d Cir. 2006) (internal quotations omitted).

Like failure to protect claims, medical indifference claims under the Eighth Amendment and Section 1983 require courts to engage in a two-part inquiry, one objective and the other subjective. "First, the alleged deprivation must be, in objective terms, sufficiently serious. Second, the defendant must act with a sufficiently culpable state of mind." *Chance*, 143 F.3d at 702.

In the context of medical care, two inquiries determine whether a deprivation is objectively serious. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. Because "the prison official's duty is only to provide reasonable care," prison officials are liable only if they fail "'to take reasonable measures' in response to a medical condition." *Id.* at 279–80 (quoting *Farmer*, 511 U.S. at 847). The second inquiry is "whether the inadequacy in medical care is sufficiently serious." *Id.* at 280. If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Id.* In general, a "sufficiently serious" medical need is a "condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

If the offending conduct is the "medical treatment given," however, "the seriousness inquiry is narrower." *Salahuddin*, 467 F.3d at 280. When "the prisoner is receiving appropriate on-going treatment for his condition," and brings a "denial of medical care claim based on a temporary delay or interruption in treatment," courts look to "the severity of the temporary deprivation alleged by the prisoner," not "the severity of the prisoner's underlying medical condition." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003); *see Sledge v. Fein*, No. 11-CV-7450 (PKC), 2013 WL 1288183, at *5 (S.D.N.Y. Mar. 28, 2013) ("[I]n cases of delayed or inadequate care, 'it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant ...'") (quoting *Smith*, 316 F.3d at 186); *see also Bellotto v. Cnty. of Orange*, 248 Fed. App'x 232, 236 (2d Cir. 2007) ("When a prisoner alleges denial of adequate medical care, we evaluate the seriousness of the prisoner's underlying medical condition. When a prisoner alleges 'a temporary delay or interruption in the provision of otherwise adequate medical treatment,' we focus on the seriousness of the particular risk of harm that resulted from 'the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'") (quoting *Smith*, 316 F.3d at 185) (internal citation omitted).

A prison official acts with the requisite deliberate indifference when that official "knows of and disregards an excessive risk to inmate health or safety…" *Chance*, 143 F.3d at 702 (citing *Farmer*, 511 U.S. at 837); *see Farmer* 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference.").

Plaintiff has not adequately pleaded objectively serious harm sufficient to survive Defendants' motion. Plaintiff claims that as a result of Defendant Way's assault, he suffered a

13

"severe facial laceration requiring his for[e]head to be glued shut."  (FAC ¶ 7.)  Plaintiff further states the injury's long-term effects have included a scar under his eye, migraine headaches, dizziness, and severe anxiety.  (*Id.* ¶ 8.)  Plaintiff describes an undoubtedly serious head injury. However, Plaintiff does not contend that he was deprived of adequate medical treatment for that injury.  Rather, he states that treatment was unreasonably delayed because he was forced to wait 20 to 30 minutes to be taken to a doctor.  (*Id.* ¶ 9.)  Plaintiff's position is that this delay was objectively severe for purposes of an Eighth Amendment deliberate indifference analysis.

"Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, [the Second Circuit] has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Demata v. N.Y. State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (unpublished) (citations omitted); *see Ferguson v. Cai*, No. 11-CV-6181, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) ("Where temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in [the Second] Circuit, they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness."); *c.f. Lloyd v. Lee*, 570 F. Supp. 2d 556, 568 (S.D.N.Y. 2008) (finding "a sixteen-month delay from the time [the plaintiff] was injured until he finally obtained relief in the form of surgery on his shoulder," to be sufficient to defeat a motion to dismiss where the plaintiff "purportedly experienced extreme pain, discomfort, and loss of mobility" throughout the relevant period); *Espinal v. Coughlin*, 98 Civ. 2579(RPP), 2002 WL 10450, at *3 (S.D.N.Y. Jan. 3, 2002) (no deliberate indifference of treatment for ruptured ACL, a common knee injury, where surgery was delayed for three years) (quotation omitted).

14

Here, Plaintiff does not claim that he had a life-threatening or fast-degenerating condition that was ignored for days, that he ever required major surgery for his injury, that he suffered extreme pain, or that his prognosis was worsened as a result of the 20 to 30 minutes he spent waiting for medical care.  Nor is there any basis for concluding that Defendant Way deliberately blocked his access to medical treatment in order to inflict punishment.

Furthermore, even if Plaintiff had established an objectively serious harm, he does not adequately allege that Defendants acted with deliberate indifference.  Plaintiff admits that Defendant Browne took him for medical attention immediately after he arrived at the scene and had asked Plaintiff what happened.  (FAC ¶ 10.)  Moreover, while Plaintiff states that Defendant Way "let [him] bleed" for 20 to 30 minutes after he asked for medical attention, there is no indication from the FAC that Defendant Way was aware of the urgency of Defendant's condition and failed to act in a timely manner.  *See Frith v. City of N.Y.*, 203 F. Supp. 3d 386, 391 (S.D.N.Y. 2016) (A bare allegation that plaintiff was denied care "without reason" cannot suffice.).

For these reasons, Plaintiff has not pleaded a sufficiently serious medical condition that was met with deliberate indifference by either Defendant.  Plaintiff's claims based on delayed medical treatment, as currently pleaded, are dismissed without prejudice.

### c. Deprivation of Procedural Due Process

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  To state a procedural due process claim, Plaintiff must show "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process."  *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).  But, even if a plaintiff succeeds in initially pleading a due process claim, such

claim may nonetheless be dismissed, under certain conditions, if the due process violation was subsequently cured.

With regard to the first prong, a prisoner's liberty interest may be implicated by SHU or keeplock confinement "only if the discipline imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  To determine whether the plaintiff endured an "atypical and significant hardship," courts consider "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions" as well as the duration of the segregated confinement.  *Davis*, 576 F.3d at 133.  Although the Second Circuit has declined to establish bright-line rules in this area, it has explicitly noted that "SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions" or "a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical."  *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004).  The Second Circuit has affirmed dismissal of due process claims in the absence of a detailed factual record only in cases where the period of time spent in SHU was less than 30 days and there was no indication that the plaintiff endured unusual SHU conditions.  *Id.* at 66 (citing *Hynes v. Squillace*, 143 F.3d 653, 658–59 (2d Cir. 1998) (per curiam) (21 days in keeplock); *Arce v. Walker*, 139 F.3d 329, 335–36 (2d Cir. 1998) (18 days in SHU); *Frazier v. Coughlin*. 81 F.3d 313, 317 (2d Cir. 1996) (12 days in SHU)).

Here, Plaintiff alleges that he was sent to SHU for 30 days.  (FAC ¶ 12.)  This constitutes an "exceedingly short" period of confinement.  *Palmer*, 364 F.3d at 66.  Plaintiff has not made

any allegation that he endured unusual SHU conditions during his confinement.  Accordingly, Plaintiff has not pleaded deprivation of a cognizable interest in liberty.

Moreover, even assuming that Plaintiff's SHU confinement implicated a liberty interest, the FAC fails to allege that Plaintiff was deprived of due process.  The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination.  *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing, *inter alia, Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974)). Plaintiff does not claim that he did not receive any of these protections.  Rather, he alleges only that his disciplinary hearing was precipitated by a false misbehavior report and disciplinary ticket issued by Defendant Browne.

It is well-settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988)); *see Pittman v. Forte*, No. 9:01-CV-0100, 2002 WL 31309183, at *5 (N.D.N.Y. July 11, 2002); *Santana v. Olson*, No. 07-CV-0098, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007) ("[T]he filing of a false behavior report by a correctional officer does not state a claim for relief.").  "The only constitutional violation that could occur [where a false misbehavior report is filed, without more,] is if plaintiff were not provided adequate due process in any proceeding which is based upon the misbehavior report.  In that case, the claim is not based on [the] truth or falsity of the misbehavior report but instead on the conduct of the hearing itself."  *Santana*, 2007 WL 2712992 at *2.  However, "[t]he filing of a false report does not, of itself, implicate the

guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing." *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986).

Here, Plaintiff has failed to plead that he suffered any constitutional violation as a result of the disciplinary hearing related to Defendant Browne's misbehavior report. And while false accusations contained in a misbehavior report could conceivably rise to a constitutional violation where there has been more, such as retaliation against the prisoner for exercising a constitutional right, *see Boddie*, 105 F.3d at 862, Plaintiff makes no such additional allegations against Defendant Browne. Accordingly, Plaintiff's procedural due process claim is dismissed without prejudice.

### d. Retaliation

To successfully establish a retaliation claim under the First Amendment, "a prisoner must show that '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). "While . . . the scope of conduct that can constitute actionable retaliation in the prison setting it is broad, it is not true that every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim. *Dawes v. Walker*, 239 F.3d 489, 492-93 (2d Cir. 2001), *overruled on other grounds by Swierkiewciz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). Rather, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Id.* at 493. Where the retaliatory conduct is "simply *de minimis*," it falls "outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003). This inquiry is "tailored to the different circumstances

in which retaliation claims arise," although it accounts for the fact that prisoners "may be required to tolerate more than . . . average citizens." *Dawes*, 239 F.3d at 493 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999)).

An inmate has a constitutional right under the First Amendment to file grievances, and prison officials may not retaliate against an inmate for exercising that right. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). In the FAC, Plaintiff states that some time after he filed a grievance related to the alleged assault, Defendant Way harassed and threatened him for approximately 30 minutes. (FAC ¶¶ 16–17.) However, in Plaintiff's motion to amend, Plaintiff states that his "retaliation claim held no grounds under the ambit of constitutional protection and is simply *de minimis*." (Pl. Mot. 19.) Plaintiff also states that he "drops all retaliation claim[s] and will proceed with [his] othe[r] claim[s] for they are the only d[ir]ect violations of the plaintiff's rights." (*Id.* 13.) Since Plaintiff indicates that he no longer wishes to pursue his retaliation claim, such claim is dismissed without prejudice.

### e.  Claims Against Defendant Browne

The only claim remaining in this action is Plaintiff's Eighth Amendment excessive force claim. While Defendants do not move to dismiss that claim as against Defendant Way, they argue it cannot be maintained against Defendant Browne because Plaintiff has not alleged Browne's personal involvement. The Court agrees.

"[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). Instead, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity." *Warren v. Pataki*, 823

19

F.3d 125, 136 (2d Cir. 2016) (emphasis added) (internal quotation marks omitted), *cert. denied sub nom. Brooks v. Pataki*, 137 S. Ct. 380 (2016).  As the Second Circuit has explained, the personal involvement of a supervisory defendant may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.[4]  Notably, it does not suffice for a plaintiff to "merely recite[] the legal elements of a successful § 1983 claim for supervisory liability."  *Dotson v. Farrugia*, No. 11 Civ. 1126(PAE), 2012 WL 996997, at *6 (S.D.N.Y. Mar. 26, 2012) (citing *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)); *accord Samuels v. Fischer*, 168 F. Supp. 3d 625, 636 (S.D.N.Y. 2016) ("[E]ven within the context of the *Colon* framework, 'merely recit[ing] the legal elements of a successful § 1983 claim for supervisory liability . . . does not meet the plausibility pleading standard.'").  "[C]onclusory, unsupported allegations of gross negligence or the existence of a policy are simply insufficient to establish liability of supervisory prison officials under §1983." *Alsaifullah v. Furco*, No. 12 Civ. 2907(ER), 2013 WL 3972514, at *16 (S.D.N.Y. Aug. 2, 2013) (citations and internal quotation marks omitted); *accord McNaughton v. de Blasio*, No. 14 Civ. 221 (KPF), 2015 WL 468890, at *6 (S.D.N.Y. Feb. 4, 2015).

---

[4]Although there is a split in authority, "[t]he majority of the district courts [in this circuit] . . . have held that, absent any contrary directive for the Second Circuit, all five *Colon* factors survive where the constitutional violation at issue does not require a showing of discriminatory intent."  *Allah v. Annucci*, No. 16-CV-1841 (KMK), 2017 WL 3972517, at *6 (S.D.N.Y. Sept. 07, 2017) (quoting *El-Hanafi v. United States*, No, 13-CV-2072, 2015 WL 72804, at *13 (S.D.N.Y. Jan. 6, 2015)) (collecting cases).  This Court has already expressed its agreement with that proposition and will apply it with equal force here.  *See Booker v. Griffin*, No. 16-CV-00072 (NSR), 2018 WL 1614346, at *11 (S.D.N.Y. Mar. 31, 2018); *Marshall v. Annucci*, No. 16-CV-8622 (NSR), 2018 WL 1449522, at *9 (S.D.N.Y. Mar. 22, 2018); *Matteo v. Perez*, No. 16-CV-1837 (NSR), 2017 WL 4217142, at *5 (S.D.N.Y. Sept. 19, 2017).  As Plaintiff's claims against Cheverko do not relate to allegations of discrimination, the Court will consider all five *Colon* factors.

The only non-conclusory allegation against Defendant Browne in relation to the assault is that he arrived after the assault and led Plaintiff to obtain medical treatment.  (FAC ¶ 10.) Plaintiff has not pleaded facts showing that Browne was directly involved in the violation or created any custom or policy that facilitated the unconstitutional practice or allowed any such policy to continue.  To the extent Plaintiff seeks to hold Browne responsible because he told Browne about the assault and Browne did not punish Way or otherwise remedy the constitutional violation, mere " knowledge and acquiescence"  to unconstitutional conduct, or mere failure to act on a complaint, without more, fails to state a claim against a Section 1983 defendant.  *Faulk v. N.Y. City Dep't of Corr.*, No. 08-CV-01668(LGS), 2014 WL 239708, at *10 (S.D.N.Y. Jan. 21, 2014) (citing *Iqbal*, 556 U.S. at 677); *Sanders v. City of N.Y.*, No. 14-CV-6156, 2016 WL 1023318, at *3 (S.D.N.Y. Mar. 8, 2016); *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (New York State Department of Corrections and Community Supervision Commissioner was not personally involved simply because Plaintiff wrote complaint letters to him); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("[T]he receipt of letters or grievances, by itself, does not amount to personal involvement." ).

Thus, Plaintiff has failed to establish that Browne has *any* personal involvement in the alleged constitutional violation.  Plaintiff's excessive force claim is therefore dismissed against Defendant Browne without prejudice.

## III.    Leave to Amend

"Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citations omitted).  Here, although the proposed second amended complaint submitted

by Plaintiff with his motion to amend does not cure any of the deficiencies identified the Court, it is possible that the Plaintiff can plead facts that do cure those deficiencies.  Accordingly, the Court will grant Plaintiff leave to file a second amended complaint as to those claims dismissed without prejudice.   Although Plaintiff certainly has high hurdles to overcome, leave to amend in this case is not necessarily futile at this juncture.  Furthermore, as this case is still in its infancy, there would be minimal prejudice to Defendants in permitting Plaintiff to amend.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion to amend is DENIED without prejudice, and Defendants' partial motion to dismiss is GRANTED in its entirety.  All claims other than Plaintiff's excessive force claim against Defendant Larry Way are dismissed without prejudice.

Plaintiff may file a Second Amended Complaint consistent with this Opinion on or before October 2, 2020, should he choose to reassert his § 1983 claims that have been dismissed without prejudice.  An Amended Civil Rights Complaint Form is attached.  Defendants shall file answers or otherwise respond to the Second Amended Complaint on or before November 2, 2020. Because Plaintiff's Second Amended Complaint will completely replace, not supplement, the First Amended Complaint, any facts or claims that Plaintiff wishes to remain must be included in the Second Amended Complaint.  Failure to file a Second Amended Complaint within the time allowed, and without good cause, will result in the dismissal of the claims dismissed in this Opinion with prejudice.

If Plaintiff does not file a Second Amended Complaint by October 2, 2020, the remaining Defendant Larry Way is directed to file an answer as to the surviving claim of the First Amended Complaint on or before November 2, 2020.  The parties are then directed to confer, complete, and submit to the Court the attached case management plan on or before December 2, 2020.

22

The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 39 and 41.  The Clerk of the Court is further directed to terminate Defendant Sgt. R. Browne. Finally, the Clerk of the Court is directed to mail a copy of this Opinion to *pro se* Plaintiff at his last address listed on ECF and file proof of service on the docket.


Dated: August 31, 2020                                        SO ORDERED:
       White Plains, New York


_____
        NELSON S. ROMÁN
   United States District Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

_____CV_____

(Include case number if one has been assigned)

-against-

**COMPLAINT**

(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name                    Middle Initial                Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                              State                    Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name                    Last Name                         Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                             State                   Zip Code

Defendant 2:

First Name                    Last Name                         Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                             State                   Zip Code

Defendant 3:

First Name                    Last Name                         Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                             State                   Zip Code

Defendant 4:

First Name                    Last Name                         Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                             State                   Zip Code

## V.     STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.   RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

UNITED STATES DISTRICT COURT                    Rev. May 2014
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x


                                                    **CIVIL CASE DISCOVERY PLAN**
                            Plaintiff(s),           **AND SCHEDULING ORDER**

        - against -


                            Defendant(s).        _____ CV _____ (NSR)


-------------------------------------------------------------x

        This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with
counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.      All parties [consent] [do not consent] to conducting all further proceedings before
        a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).
        The parties are free to withhold consent without adverse substantive consequences.
        (If all parties consent, the remaining paragraphs of this form need not be
        completed.)

2.      This case [is] [is not] to be tried to a jury.

3.      Joinder of additional parties must be accomplished by _____.

4.      Amended pleadings may be filed until _____. Any party
        seeking to amend its pleadings after that date must seek leave of court via motion.

5.      Interrogatories shall be served no later than _____, and responses
        thereto shall be served within thirty (30) days thereafter.  The provisions of Local
        Civil Rule 33.3 [shall] [shall not] apply to this case.

6.      First request for production of documents, if any, shall be served no later than
        _____.

7.      Non-expert depositions shall be completed by _____.

        a.      Unless counsel agree otherwise or the Court so orders, depositions shall not
                be held until all parties have responded to any first requests for production
                of documents.

        b.      Depositions shall proceed concurrently.

        c.      Whenever possible, unless counsel agree otherwise or the Court so orders,

non-party depositions shall follow party depositions.

8.   Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.   Requests to Admit, if any, shall be served no later than _____.

10.   Expert reports shall be served no later than _____.

11.   Rebuttal expert reports shall be served no later than _____.

12.   Expert depositions shall be completed by _____.

13.   Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.   **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.   Any motions shall be filed in accordance with the Court's Individual Practices.

16.   This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.   The Magistrate Judge assigned to this case is the Hon. _____.

18.   If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.   The next case management conference is scheduled for _____, at _____.  (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York
_____

_____
Nelson S. Román, U.S. District Judge